IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

       Plaintiff,

v.

7.26611032 BITCOINS,

       Defendant.

---

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

---

The United States of America, by and through United States Attorney Robert C. Troyer and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

## JURISDICTION AND VENUE

1. The United States of America (the AUnited States@) has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. ' 881 and 18 U.S.C. § 2323(a)(1)(C), seeking forfeiture of defendant property based upon violations of 21 U.S.C. ' 801 *et seq.* and 18 U.S.C. § 2320(a)(4). This Court has jurisdiction under 28 U.S.C. '' 1345 and 1355.

2. Venue is proper under 21 U.S.C. ' 881(j) and 28 U.S.C. ' 1395, as the defendant property is located, and some of the acts described herein occurred, in the District of Colorado.

1

## DEFENDANT PROPERTY

3.  Defendant property is more fully described as:

   a.  7.26611032 bitcoins, (defendant 7.26611032 bitcoins) were seized on October 12, 2017, at the DEA Colorado Springs Resident Office, in Colorado Springs, Colorado. Defendant 7.26611032 bitcoins are currently being held by the United States Marshals Service.

## FACTUAL BASIS FOR FORFEITURE

Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me:

4.  In October 2016, the Drug Enforcement Administration (DEA) Savannah Resident Office initiated an investigation into the illegal manufacturing and distribution of controlled substances by Jimmy Baugh (Jimmy). Investigators had received information from a Source of Information that Jimmy had purchased items over the internet that were consistent with the manufacturing of counterfeit pills for resale, including a pill press machine, pill die casts and compounds used to manufacture pills.

5.  On November 22, 2016, a search warrant was executed at Jimmy's residence at 307 Holly Court, Kingsland, Georgia. Investigators discovered evidence of a narcotics distribution operation, and items used in the consumption of illegal narcotics. Investigators also discovered photographs on Jimmy's phone showing a large pill press

2

machine, large amounts of pills stored in cardboard boxes, pills in gallon-sized zip lock bags, and close-up photos of single pills.

6. On November 28, 2016, investigators interviewed Jimmy's ex-wife Amber Baugh (Amber). Amber said that Jimmy began manufacturing counterfeit Xanax pills at their house at 307 Holly Court in either June or July of 2015. Jimmy's brother, Jarod Baugh (Jarod), moved into the house in September 2015 to assist Jimmy in the manufacturing of pills. Amber explained that Jimmy had a contact in China who would ship the necessary supplies used to manufacture the pills.

7. Amber stated that it took Jimmy and Jarod approximately six weeks to establish themselves as legitimate sellers on the dark web. They eventually were shipping counterfeit Xanax pills to about 30 customers a week.

8. In February 2016, Jimmy and Jarod stopped manufacturing pills at 307 Holly Court and moved the manufacturing operation to a rental house at 197 Atkinson Road, Byron, Georgia. It was during this time that Jimmy and Jarod's brother, Jason Baugh (Jason), began to get seriously involved in the operation. Amber said that after the move to 197 Atkinson Road, production increased to the point where they were averaging 50 shipments a day.

9. In December 2016, the DEA Colorado Springs Resident Office received information from the DEA Savannah Resident Office about the operation moving to Colorado Springs, Colorado. Investigators learned that Jason and Jarod were possibly living in houses at 507 Salano Drive and 2047 Patrician Way in Colorado Springs, Colorado.

3

10. On January 26, 2017, DEA executed search warrants at both locations.

11. Upon execution of the search warrant at 507 Salano Drive, investigators discovered suspected narcotics, suspected marijuana plants, 6 pill presses, numerous pill press dies, a vacuum oven, military-style body armor, and various firearms including 3 handguns, 2 shotguns, and 5 rifles. Investigators also discovered Jason inside the residence, deceased from a self-inflicted gunshot wound.

12. Upon execution of the search warrant at 2047 Patrician Way, investigators discovered suspected narcotics, shipping labels, shipping boxes, 3 industrial mixing machine, and various firearms, including 2 handguns, 1 shotgun, and 4 rifles. DEA agents also arrested Jarod for Unlawful Possession of a Schedule IV Controlled Substance with Intent to Distribute, and Special Offender-Possession of a Deadly Weapon.

13. The suspected narcotics recovered from the residences included an unknown number of yellow pills with the marking "R039" and an unknown number of white pills with the marking "XANAX." DEA laboratory results indicate that some of the pills contained Alprazolam and some contained Nordiazepam, which are both Schedule IV controlled substances. Pfizer sells Alprazolam under the trade name Xanax.

14. Investigators also discovered a powder, in which DEA laboratory results indicate the presence of 3,4-dichloro-N-[2-(dimethylamino)cyclohexyl]-N-methylbenzamide, also known as U-47700, which is a synthetic opioid and a Schedule I controlled substance.

15. The pill press dies had markings that included, "Xanax", "30", "M", "R039", "G3722", "V", "GG249", and "306S." Legitimate Alprazolam pills have the markings "R039", "G3722", and "GG249."

16. The Pfizer Global Security Director confirmed that Pfizer, which owns the trademark "Xanax", did not authorize Jason, Jarod, or Jimmy Baugh to manufacture, deliver, or possess with the intent to manufacture or deliver the counterfeit tablets bearing the Xanax trademark that were recovered during the search warrants. Xanax is a registered trademark with United States Patent and Trademark Office.

17. On October 12, 2017, investigators interviewed Jarod at the DEA office in Colorado Springs, Colorado about the Baugh brothers' drug manufacturing operation. Jarod said that Jimmy had already been manufacturing counterfeit Xanax at his Kingsland, Georgia residence when he moved in during April or May 2015. Jarod said that Jimmy purchased the necessary supplies from a contact in China, via a dark web website, and had them shipped to 307 Holly Court, Kingsland, Georgia. Jarod said that he was responsible for mixing the ingredients and then pressing the pills using a pill hand press. Jarod said he could manufacture up to 3,000 and 4,000 counterfeit Xanax tablets per day. Jarod said Jimmy would then package the counterfeit Xanax tablets and ship them to customers from U.S. Post Offices.

18. Jarod said that the operation functioned in this way for six months until they obtained a bigger automatic pill press and moved production to 197 Atkinson Road, Byron, Georgia. Jarod also moved into this address around this time. With the new press, they could manufacture up to 10,000 to 20,000 tablets a day. Jarod said that his

brother Jason became involved in the operation after they moved manufacturing to 197 Atkinson Road. Jarod said that by this time there was a division of labor within the operation. Jarod was responsible for manufacturing the pills, Jimmy was responsible for ordering the necessary supplies from the contact in China, and Jason was responsible for coordinating the receipt of supplies from China and for coordinating shipments of counterfeit Xanax pills to customers.

19. Jarod said that Jimmy had made the decision to move the manufacturing operation to Colorado Springs, Colorado. Jarod initially came to Colorado Springs on his own in March 2016, while Jason stayed in Georgia and continued manufacturing pills. Jason would then ship the finished pills to Jarod, who would ship them out to customers.

20. Jason moved to Colorado Springs, Colorado in September 2016 and moved the majority of the manufacturing equipment from Georgia at that time. The other necessary supplies began arriving in Colorado Springs from China in October 2016. Jarod said that at this point, the ingredients were mixed at 2047 Patrician Way, and then the mixture was transported to 507 Salano Drive to be pressed into pills.

21. Jarod said that he and his brothers were paid exclusively in bitcoin to manufacture and distribute the counterfeit Xanax tablets. The contact in China would receive payments from customers, via dark web website sales, in bitcoin and would keep half and give the other half to Jimmy. Jimmy would then split his share into thirds, keeping a third for himself and giving a third to both Jarod and Jason. Jarod later learned that he was actually receiving only one fifth of the brothers' share of proceeds, but he

never said anything because he was happy to be making money. Jarod said he usually made between $3,000 and $6,000 per month, but one month he made $10,000.

22.   Jarod said he believed his brother Jason had a bitcoin account and if he could look at evidence taken from 507 Salano Drive, he may be able to access the account. Jarod was given photocopies of some of the documents seized from 507 Salano Drive, which included a sheet of paper with a twelve-word phrase written on it. Jarod used this twelve-word phrase to access Jason's bitcoin account at Mycelium. The account contained defendant 7.26611032 bitcoins. Investigators transferred the bitcoins to an official U.S. government bitcoin account.

23.   Jason had no reported wages since moving to Colorado. Jarod said that Jason had no legitimate employment since being laid-off from Boeing in Georgia in May 2015.

24.   Jarod also provided investigators access to his own bitcoin account, and investigators transferred the bitcoins to an official U.S. government bitcoin account. Jarod said he had not worked since moving to Colorado and his last legitimate employment was with the United States Navy, from which he separated in March 2013. He stated he initially attended school, but left school when he began manufacturing and distributing counterfeit Xanax tablets. Jarod said he had earned approximately 200 bitcoins from manufacturing and distributing counterfeit Xanax tablets.

25.   In summary, defendant 7.26611032 bitcoins represent proceeds traceable to the exchange of a controlled substance and the manufacture and trafficking of counterfeit goods.

## VERIFICATION OF THOMAS GOODWIN
## TASK FORCE OFFICER, DRUG ENFORCEMENT ADMINISTRATION

I, Task Force Officer Thomas Goodwin, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

_____
Thomas Goodwin
Task Force Officer- DEA

STATE OF COLORADO     )
                     ) ss
COUNTY OF_____)

The foregoing was acknowledged before me this 7th day of March, 2018 by Task Force Officer Thomas Goodwin, Drug Enforcement Administration.



_____
Notary Public - Colorado
My Commission Expires: 06/15/2021

### FIRST CLAIM FOR RELIEF

26. The Plaintiff repeats and incorporates by reference the paragraphs above.

27. By the foregoing and other acts, defendant 7.26611032 bitcoins constitutes or was derived from proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELEIF

28. The Plaintiff repeats and incorporates by reference the paragraphs above.

29. By the foregoing and other acts, defendant 7.26611032 bitcoins constitutes or was derived from proceeds traceable to trafficking in a drug using a counterfeit mark, in violation of 18 U.S.C. § 2320(a)(4), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 2323(a)(1)(C).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the Defendant property in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. ' 2465.

DATED this 6th day of March, 2018.

Respectfully submitted,

ROBERT C. TROYER
United States Attorney

By: *s/Tonya S. Andrews*
Tonya S. Andrews
Assistant United States Attorney
1801 California Street, Ste. 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0402
E-mail: tonya.andrews@usdoj.gov
*Attorney for Plaintiff*